UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SHARON ROSE MARCUS, individually,
and on behalf of all other similarly situated
Florida residents,

      Plaintiff,

v.                                         Case No. 8:12-cv-2864-T-24 TGW

MEDICAL INITIATIVES, INC. d/b/a
Medical Initiatives - Dothan,

      Defendant.
_____/

## ORDER

This cause comes before the Court on Plaintiff's Motion to Remand. (Doc. No. 19). Defendant opposes the motion. (Doc. No. 21). Plaintiff has sought leave to file a reply brief (Doc. No. 24), but a reply is not necessary.[1] As explained below, Plaintiff's motion to remand is granted.

## I. Background

Plaintiff contends that Defendant is leading consumers to believe that they are purchasing a brand name drug, when in fact Defendant is manufacturing and distributing a counterfeit drug in violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"). In support of this contention, Plaintiff alleges the following in her amended complaint (Doc. No. 2): Defendant is a Florida resident. However, Defendant's operations are conducted in Alabama,

---

[1] On February 25, 2013, Defendant filed a Notice of Supplemental Supreme Court Authority regarding the Supreme Court's February 20, 2013 decision in Gunn v. Minton, 2013 WL 610193 (Feb. 20, 2013). (Doc. No. 25).

and it is doing business in Florida under a non-resident pharmacy license.

Plaintiff contends that Defendant is violating Florida law, because Defendant manufactures medications for sale and distribution in Florida, and as a non-resident prescription drug manufacturer, it is required to have a non-resident prescription drug manufacturer permit, which it does not have.  Furthermore, Plaintiff contends that Defendant violates Florida law by participating in the manufacture, sale, and distribution of counterfeit pharmaceuticals in Florida and representing them to be original, name brand pharmaceuticals.  Additionally, Plaintiff contends that Defendant violates Florida law by misleading consumers into believing that it manufactures the medications pursuant to industry standards and/or Good Manufacturing Practices, when it does not.

Plaintiff contends that she and others have been damaged by Defendant's conduct.  Specifically, she alleges that she has a medical condition and was prescribed and has used Defendant's medication.  However, because Plaintiff contends that the medication that Defendant manufactured and dispensed was counterfeit, she was damaged by buying medication that had no economic value.  As a result of Defendant's conduct, Plaintiff asserts two claims: (1) violation of FDUTPA, and (2) common law assumpsit.

Plaintiff filed this suit in state court, because she is a Florida resident, Defendant is a Florida resident, the proposed class will be made up of Florida residents, and she is asserting only state law claims.  Defendant, however, removed this case to this Court based on federal question jurisdiction.  In support of removal, Defendant contends that this Court has federal question jurisdiction because Plaintiff's claims necessarily raise a stated federal issue, actually disputed and substantial, that this Court may entertain without disturbing the balance of federal

and state judicial responsibilities.  In response, Plaintiff filed a timely motion to remand.

## II.  Motion to Remand

Because Defendant removed this case from state court, Defendant has the burden of establishing subject matter jurisdiction.  See Adventure Outdoors, Inc. v. Bloomberg, 552 F.3d 1290, 1294 (11th Cir. 2008)(citation omitted).  "Any doubts about the propriety of federal jurisdiction should be resolved in favor of remand to state court." Id. (citation omitted).

Plaintiff argues that this case should be remanded to state court, because this Court lacks subject matter jurisdiction over her claims.  More specifically, Plaintiff contends that her claims do not explicitly arise under federal law, nor do they raise a stated federal issue that is actually disputed and substantial.  As explained below, the Court agrees with Plaintiff that subject matter jurisdiction is lacking and that remand is required.

In order to determine whether there is federal question subject matter jurisdiction over this case, the Court must look at Plaintiff's complaint and cannot consider potential federal defenses.  See Merrell Dow Pharmaceuticals Inc. v. Thompson, 478 U.S. 804, 808 (1986).  The vast majority of cases that come within federal question jurisdiction are those in which federal law creates the cause of action.  See id.  However, "in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing, 545 U.S. 308, 312 (2005)(citation omitted).  The Supreme Court has described the "'special and small category' of cases" in which federal question jurisdiction will lie over state-law claims that implicate significant federal issues as "slim." Gunn v. Minton, 2013 WL 610193, at *5 (Feb. 20, 2013)(quoting Empire Healthchoice Assurance v. McVeigh, 547 U.S. 677, 699, 701 (2006)).  Therefore, a brief review

of some of the relevant cases on this issue is warranted.

In Merrell Dow, the underlying plaintiffs alleged that the defendant misbranded the drug Bendectin in violation of the Federal Food, Drug, and Cosmetic Act ("FDCA") and that such violation of the FDCA constituted a rebuttable presumption of negligence, which caused injury to the plaintiffs. See Merrell Dow, 478 U.S. at 805-06. The underlying defendant removed the case to federal court, and the issue before the Supreme Court was whether federal question subject matter jurisdiction existed due to the presence of a federal issue in a state-created cause of action. See id. at 806, 810. The Court noted that the parties agreed that no federal cause of action for FDCA violations existed, and the Court "conclude[d] that the congressional determination that there should be no federal remedy for the violation of [the FDCA] is tantamount to a congressional conclusion that the presence of a claimed violation of the [FDCA] as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction." Id. at 810-11, 814. As a result, the Court concluded that no federal question jurisdiction existed over the case. See id. at 817. After Merrell Dow, the Eleventh Circuit stated "that it will be only the exceptional federal statute that does not provide a private remedy but still raises a federal question substantial enough to confer federal question jurisdiction when it is an element of a state cause of action." City of Huntsville v. City of Madison, 24 F.3d 169, 174 (11th Cir. 1994).

Thereafter, the Supreme Court was again faced with the issue of whether federal question jurisdiction existed over a state law claim in Grable. See Grable, 545 U.S. at 310. In Grable, the underlying plaintiff, Grable, brought a quiet title action in state court, claiming that the defendant's title to the subject property was invalid. See id. The defendant had bought the

4

property from the IRS after the IRS had seized the property from Grable, and Grable contended that the defendant's title to the property was invalid because the IRS had failed to properly notify Grable of the seizure in the exact manner required by 26 U.S.C. § 6335(a). See id. In finding that federal question jurisdiction existed, the Court stated:

> [F]ederal jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum.
>
> But even when the state action discloses a contested and substantial federal question, the exercise of federal jurisdiction is subject to a possible veto. For the federal issue will ultimately qualify for a federal forum only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331. . . . Because arising-under jurisdiction to hear a state-law claim always raises the possibility of upsetting the state-federal line drawn (or at least assumed) by Congress, the presence of a disputed federal issue and the ostensible importance of a federal forum are never necessarily dispositive; there must always be an assessment of any disruptive portent in exercising federal jurisdiction.
>
> These considerations have kept us from stating a "single, precise, all-embracing" test for jurisdiction over federal issues embedded in state-law claims between nondiverse parties. . . . Instead, the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities.
>
> \*   \*   \*
>
> Whether Grable was given notice within the meaning of [26 U.S.C. § 6335(a)] is thus an essential element of its quiet title claim, and the meaning of the federal statute is actually in dispute; it appears to be the only legal or factual issue contested in the case. The meaning of the federal tax provision is an important issue of federal law that sensibly belongs in a federal court. The Government has a strong interest in the "prompt and certain collection of delinquent taxes[]" [through the seizure and sale of property.] . . . The Government thus has a direct interest in the availability of a federal forum to vindicate

5

> its own administrative action, and buyers (as well as tax delinquents) may find it valuable to come before judges used to federal tax matters. Finally, because it will be the rare state title case that raises a contested matter of federal law, federal jurisdiction to resolve genuine disagreement over federal tax title provisions will portend only a microscopic effect on the federal-state division of labor.
>
> \*   \*   \*
>
> Given the absence of threatening structural consequences and the clear interest the Government, its buyers, and its delinquents have in the availability of a federal forum, there is no good reason to shirk from federal jurisdiction over the dispositive and contested federal issue at the heart of the state-law title claim.

Id. at 313-20 (internal citations omitted). The Grable Court distinguished the case from Merrell Dow, stating:

> [In Merrell Dow,] if the federal labeling standard without a federal cause of action could get a state claim into federal court, so could any other federal standard without a federal cause of action. And that would have meant a tremendous number of cases [in federal courts].

Id. at 318.

About three years after Grable, the Supreme Court in Empire Healthchoice again addressed the issue of the circumstances in which federal question jurisdiction can exist over a state law claim that implicates a federal issue. See Empire Healthchoice, 547 U.S. at 683. In Empire Healthchoice, the Court pointed out that a crucial factor supporting the result in Grable was the presence of "a nearly pure issue of law [defining "notice" under 26 U.S.C. § 6335(a)], one that could be settled once and for all and thereafter would govern numerous tax sale cases." Id. at 700 (internal quotation marks omitted); see also Adventure Outdoors, 552 F.3d at 1299 (noting that federal question jurisdiction existed in Grable because the meaning of 26 U.S.C. § 6335(a) was actually in dispute and appeared to be the only disputed legal or factual issue in the case). Thus, a strong emphasis is placed on the character of the disputed federal issue when

evaluating whether federal question jurisdiction exists, such that cases that require the resolution of pure issues of federal law provide the strongest basis for finding federal question jurisdiction. See Adventure Outdoors, 552 F.3d at 1299.

Last week, the Supreme Court in Gunn again addressed the circumstances in which federal question jurisdiction can exist over a state law claim that implicates a federal issue, stating:

> [F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. Where all four of these requirements are met, . . . jurisdiction is proper because there is a serious federal interest in claiming the advantages thought to be inherent in a federal forum, which can be vindicated without disrupting Congress's intended division of labor between state and federal courts.

Gunn, 2013 WL 610193, at *6 (internal citations and quotation marks omitted).

Accordingly, based on the case law described above, in order to determine whether there is federal question subject matter jurisdiction over the instant case, this Court must determine whether "a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." Id. at *6. As explained below, the Court concludes that federal question subject matter jurisdiction over the instant case is lacking, because the third and fourth prongs of the test have not been met.

Defendant argues that Plaintiff's claims necessarily raise a stated and disputed federal issue, because resolution of her claims requires the application of the FDCA. Specifically, Defendant argues that the FDCA must be applied to determine: (1) whether Defendant is a

manufacturer of drugs; (2) if so, whether Defendant manufactures the drug pursuant to industry standards and/or Good Manufacturing Practices; (3) whether the drug at issue that Defendant allegedly manufactures is considered a "new drug" apart from the brand name drug Defendant represents it to be; and (4) whether the drug at issue is a "counterfeit" drug. The Court assumes, without deciding, that there are stated federal issues in this case that are actually disputed; however, that does not end the Court's inquiry.

Defendant has not shown that the federal issues in this case are substantial. A substantial federal issue is "'a serious federal interest in claiming the advantages thought to be inherent in a federal forum,' one that 'justif[ies] resort to the experience, solicitude, and hope of uniformity that a federal forum offers.'" Oregon ex. rel. Kroger v. Johnson & Johnson, 832 F. Supp.2d 1250, 1256-57 (D. Or. 2011)(quoting Grable, 545 U.S. at 312, 313). Furthermore, as the Supreme Court in Gunn has explained:

> [I]t is not enough that the federal issue be significant to the particular parties in the immediate suit; that will *always* be true when the state claim necessarily raise[s] a disputed federal issue, as Grable separately requires. The substantiality inquiry under Grable looks instead to the importance of the issue to the federal system as a whole.

Gunn, 2013 WL 610193, at *7 (quotation marks omitted). With regards to the substantiality of embedded FDCA issues in state law claims, another court has stated the following:

> [T]he application of the FDCA regulatory regime is not a federal interest that requires the experience, solicitude, or uniformity provided by federal courts. To the contrary, the Supreme Court has recognized that state courts have traditionally handled state claims with embedded FDCA standards. Indeed, the Supreme Court [in Merrell Dow] noted that even a *novel* FDCA issue raised as part of a state cause of action would not typically justify the exercise of federal jurisdiction.
>
> Regarding the FDCA regime in particular, the Supreme Court has put

8

> great weight on Congress's decisions (1) not to create a federal remedy for violations of the FDCA, while (2) selectively declining to pre-empt most state causes of action based on FDCA standards. That is, Congress has affirmatively decided to keep such actions out of federal courts while tolerating overlapping regulation and litigation in state forums. All of this strongly suggests there is no need in drug-related consumer protection cases for the "experience, solicitude, and hope of uniformity that a federal forum offers." Within the context of the FDCA regime in particular, the Supreme Court [in Merrell Dow] has therefore concluded "that the presence of a claimed violation of the [FDCA] statute as an element of a state cause of action is insufficiently 'substantial' to confer federal-question jurisdiction."

Kroger, 832 F. Supp.2d at 1257 (internal citations omitted).

The instant case involves the disputed factual issue of whether Defendant acted in an unfair and deceptive manner. While Plaintiff's claims may implicate the FDCA, that is not sufficient to support federal question jurisdiction. The absence of a federal cause of action for FDCA violations weighs heavily in favor of the conclusion that the federal issues in this case are not substantial enough to support federal question jurisdiction. See City of Huntsville, 24 F.3d at 174 (stating "that it will be only the exceptional federal statute that does not provide a private remedy but still raises a federal question substantial enough to confer federal question jurisdiction when it is an element of a state cause of action"). Furthermore, this Court notes that state courts are generally presumed competent to interpret and apply federal law. See Adventure Outdoors, 552 F.3d at 1301 (citation omitted).

Defendant also has not shown that recognizing federal question jurisdiction over this case would not disrupt the balance struck by Congress between state and federal judicial responsibilities. As explained by one court:

> The substantiality and federalism prongs of Grable are closely intertwined. For the same reasons that an embedded FDCA standard

9

> does not generally constitute a "substantial" federal issue, the Supreme Court has concluded that Congress did not intend to preclude state courts from hearing FDCA-related actions. . . . Finding federal jurisdiction here could open the federal courthouse door to "a tremendous number of cases, and could therefore upset the congressionally approved division of labor between state and federal courts."

<u>Kroger</u>, 832 F. Supp.2d at 1257-58 (internal citations omitted); <u>see also</u> <u>Adventure Outdoors</u>, 552 F.3d at 1302-03 (citations omitted); <u>Caldwell v. Bristol Myers Squibb Sanofi Pharmaceuticals Holding Partnership</u>, 2012 WL 3862454, at *11 (W.D. La. June 12, 2012), adopted by 2012 WL 3866493 (W.D. La. Sept. 4, 2012).

Accordingly, because Defendant has not shown that the substantiality and federalism prongs have been met, the Court concludes that federal question subject matter jurisdiction is lacking. Therefore, the Court concludes that remand is required.

**III.  Conclusion**

Accordingly, it is ORDERED AND ADJUDGED that:

(1)   Plaintiff's Motion to Remand (Doc. No. 19) is **GRANTED**.

(2)   Plaintiff's Motion for Leave to File a Reply Brief (Doc. No. 24) is **DENIED**.

(3)   The Clerk is directed to remand this case to state court, terminate all pending motions, and then close this case.

**DONE AND ORDERED** at Tampa, Florida, this 27th day of February, 2013.

Copies to: Counsel of Record

*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge